UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-0865

| | | |
|---|---|---|
| FRED NEKOUEE, individually, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| U. S. MOTELS DOWNTOWN, INC., a | : | |
| Colorado corporation, | : | |
| | : | |
| Defendant. | : | |

_____/

## **COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendant, U. S. Motels Downtown, Inc., a Colorado corporation (sometimes referred to as "Defendant"), for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.     Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.     Defendant's property, the Quality Inn hotel, has an address of 2601 Zuni Street, Denver, Colorado 80212, in the City and County of Denver, Colorado ("Quality Inn").

3.     Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of the property.   The Defendant's property is located in and does business within this judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis, weak limbs, and he requires the use of a wheelchair for mobility.

6.      Mr. Nekouee travels to the Longmont area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

7.      Fred Nekouee stayed at the Quality Inn which forms the basis of this lawsuit on September 30, 2019 with a checkout on October 1, 2019.   He also visited the Quality Inn on March 5, 2020 on his way back from the Longmont area.

8.      Fred Nekouee requested an accessible room on his stay at the Quality Inn.

9.      Fred Nekouee stayed in accessible room 275 at the Quality Inn.

10.      Due to the barriers to access Fred Nekouee encountered at the Quality Inn on both of his visits to the Quality Inn, Fred Nekouee is deterred from visiting the Quality Inn.

11.      Fred Nekouee visited the Longmont area in early August 2018 and again on September 29, 2018 through October 3, 2018 to attend a heavy equipment auction, and he visited Rocky Mountain National Park on October 2, 2018.

12.      The Plaintiff returned to the Longmont area on February 3-6, 2019, May 7-10, 2019, and again from March 3-6, 2020.

13.      Fred Nekouee attended a heavy equipment auction on May 8, 2019 and on March

4, 2020 in Longmont, Colorado.

14.     The Plaintiff plans to return to the Longmont area in May 2020 to attend a heavy equipment auction and to vacation.

15.     Quality Inn is on the way back from Longmont just off of Interstate 25 near its intersection with Interstate 70 for easy access to Denver International Airport, and it is a good hotel location to enjoy downtown Denver.

16.     The Plaintiff visited the Quality Inn on March 5, 2020, but decided not to stay there on such visit since barriers to access remain.

17.     The Plaintiff likes to stay at moderately-priced hotels like Quality Inn.

18.     The Plaintiff plans to return to the Quality Inn again if the barriers to access are removed.

19.     The Plaintiff has encountered architectural barriers at the subject property.

20.     The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, and have impaired his ability to access the property.

21.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

22.     The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

23.     The Plaintiff encountered and observed barriers to access in the parking lot and walking surfaces, lobby, breakfast area, pool area, fitness center, restrooms, and in accessible guestroom 275, and the restroom in accessible guestroom 275 of the Quality Inn.

24.     The cross slope of the access aisle for the parking spaces for disabled patrons at   the

Quality Inn is steeper than 1:48 and steeper than 3.1%.

25.     In the parking lot, the parking spaces for disabled patrons at the Quality Inn have cross slopes steeper than 1:48 and steeper than 3.1%.

26.     The Plaintiff is deterred from visiting the Quality Inn because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

27.     During his visits to the Quality Inn, Fred Nekouee observed and encountered barriers to access in the parking lot, access aisles and walkways, in the lobby and breakfast area, and in accessible guestroom 275.   Due to such barriers to access, Fred Nekouee is deterred from staying at the Quality Inn.

28.      Defendant owns, leases, leases to, or operates a place of public accommodation (an inn, hotel, motel, or other place of lodging) as defined by the ADA, 42 U.S.C. § 12181(7)(A), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104, the Quality Inn.

29.     Quality Inn is a place of lodging.

30.     Quality Inn is a place of public accommodation.

31.     Defendant is responsible for complying with the obligations of the ADA.

32.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 39 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

33.     Fred Nekouee desires to visit the Quality Inn not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property

without fear of discrimination.

34.     The Defendant has discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

35.     The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

36.     Preliminary inspections of the Quality Inn show that ADA violations exist.

37.     Physical conditions at the Quality Inn are accurately described in each romanette (i) of each lettered subparagraph of paragraph 39 below.

38.     The ADA violations that Fred Nekouee personally encountered and observed at the Quality Inn include, but are not limited to, those set forth in paragraph 39.

39.     At the Quality Inn:

## PARKING

a.   (i) In the parking lot, the parking space for disabled patrons shown in the photograph below has a cross slope steeper than 1:48 and steeper than 3.1%.   (ii) This parking space for disabled patrons has a cross slope steeper than 1:48 and steeper than 3.1% and as steep as about 5.9%, in violation of Federal Law 2010; ADAAG § 502.4.    (iii) Due to the cross slope of this parking space, the Plaintiff's wheelchair was unstable while he unloaded from and loaded back into his vehicle.   (iv) The action required to reduce the cross slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.





b.   (i) In the parking lot, the parking space for disabled patrons shown in the photograph

below has a cross slope steeper than 1:48 and steeper than 3.1%.   (ii) This parking space for

disabled patrons, shown in the photographs below, has a cross slope steeper than 1:48 and steeper

than 3.1% and as steep as about 4.7%, in violation of Federal Law 2010; ADAAG § 502.4.   (iii) Due to the cross slope of this parking space, the Plaintiff's wheelchair was unstable while he unloaded from and loaded back into his vehicle.   (iv) The action required to reduce the cross slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.





c.   (i) In the parking lot, the parking space for disabled patrons shown in the photograph below has a cross slope steeper than 1:48 and steeper than 3.1%.   (ii) This parking space for disabled patrons, shown in the photographs below, has a cross slope steeper than 1:48 and steeper than 3.1% and is as steep as about 5.2%, in violation of Federal Law 2010; ADAAG § 502.4.

(iii) Due to the cross slope of this parking space, the Plaintiff's wheelchair was unstable while he unloaded from and loaded back into his vehicle.   (iv) The action required to reduce the cross slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.





d.    (i) In the parking lot, the parking space for disabled patrons with van access signage has a cross slope steeper than 1:48 and steeper than 3.1%.   (ii) This parking space, shown in the photographs below, has a cross slope steeper than 1:48 and as steep as about 1:22.2 (4.5%), in

violation of Federal Law 2010; ADAAG § 502.4.   (iii) This cross slope made the Plaintiff's wheelchair unstable.   (iv) The action required to reduce this cross slope is easily accomplishable and able to be carried out without much difficulty or expense.





e.   (i) In the parking lot, the cross slope of the access aisle serving the disabled parking spaces is steeper than 1:48 and is steeper than 3.1%.   (ii) The cross slope of this access aisle serving the disabled parking spaces, shown in the photographs below, is steeper than 1:48 and is as steep as about 4%, in violation of Federal Law 2010 ADAAG § 502.4.   (iii) This steep cross slope of this access aisle made the Plaintiff's wheelchair unstable.   (iv) The action required to reduce the slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.





f.   In the parking lot, the cross slope of the access aisle serving the disabled parking spaces is steeper than 1:48 and is steeper than 3.1%.   (ii) The cross slope of this access aisle, shown in the photographs below, is steeper than 1:48 and is as steep as about 1:18.2 (5.5%), in violation of

Federal Law 2010; ADAAG § 502.4.   (iii) The cross slope in this access aisle made the

Plaintiff's wheelchair unstable.   (iv) The action required to reduce the cross slope of this access

aisle is easily accomplishable and able to be carried out without much difficulty or expense.





g.    (i) The cross slope of the walking surface at the top of the access ramp in front of the hotel is steeper than 1:48 and is steeper than 3.1%.   (ii) The cross slope of the walking surface at the top of the access ramp in front of the hotel, shown in the photographs below, is steeper than 1:48 and is as steep as about 1:15.9 (6.3%), in violation of Federal Law 2010 ADAAG § 403.3. (iii) This cross slope made the Plaintiff's wheelchair unstable and caused the Plaintiff's wheelchair to slip sideways.   (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.





h.    (i) The running slope of the concrete section at the top of the access ramp in front of the

hotel is steeper than 1:12.   (ii) The running slope of the concrete section at the top of the access

ramp, shown in the photographs below, is steeper than 1:12 and is as steep as about 1:7.6

(13.2%), in violation of Federal Law 2010; ADAAG § 405.2.   (iii) Due to the running slope of

this section of the access ramp, the Plaintiff required assistance to ascend and to descend this

ramp.   (iv) The action required to reduce the running slope of this section of the access ramp is

easily accomplishable and able to be carried out without much difficulty or expense.





i.    (i) The slope of the access curb ramp side or flare in front of the hotel is steeper than

1:10.   (ii) The slope of the access curb ramp flare in front of the hotel, shown in the photographs

below, is steeper than 1:10 and is as steep as about 1:6.2 (16.1 %), in violation of Federal Law

2010; ADAAG § 406.3.   (iii) While moving in his wheelchair, the Plaintiff had to avoid this curb ramp flare so that he would not overturn his wheelchair.   (iv) The action required to reduce the slope of this curb ramp flare is easily accomplishable and able to be carried out without much difficulty or expense.





j.    (i) The transition from the access aisle serving the accessible parking spaces shown in the photograph below to the ramp leading to the accessible route contains change of level greater than 0.5 inches.   (ii) This change in level is greater than 0.5 inches and is about 1.5 inches, in violation of Federal Law 2010; ADAAG §§ 303.3, 405.4.   (iii) While moving in his wheelchair, the Plaintiff encountered this change of level and it stopped the forward movement of his wheelchair, and he required assistance to move over it.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.





k.   (i) The access ramp shown in the photograph below projects into the parking access aisle.

(ii) The curb ramp shown in the photograph below projects into the parking access aisle and does

not have a proper landing, in violation of Federal Law 2010; ADAAG §§ 406.5 and 502.4.   (iii)

The Plaintiff used this access ramp with assistance, and it endangered him by projecting into the parking access aisle.   (iv) The actions required to remove the portion of this access ramp that projects into the access aisle and to cut the curb are easily accomplishable and able to be carried without much difficulty or expense.



**INTERIOR LOBBY AREA, COUNTER**

l.   (i) In the lobby, the running slope of the ramp from the hotel lobby to the breakfast area is steeper than 1:12.   (ii) The running slope of the ramp from the hotel lobby to the breakfast area is steeper than 1:12 and is as steep as about 1:5.3 (18.8%), in violation of Federal Law 2010; ADAAG § 405.2.   (iii) Due to the running slope of this ramp, the Plaintiff required assistance to ascend and to descend this ramp.   (iv) The action required to reduce the slope of this ramp is easily accomplishable and able to be carried out without much difficulty or expense.





m.   (i) In the lobby, the only way to enter the fitness center from the lower lobby area is by

using stairs.   (ii) As shown in the photographs below, the only way to enter the fitness center

from the lower lobby area is by using stairs and there is no ramp, elevator or platform lift to

access the fitness level, in violation of Federal Law 2010; ADAAG § 402.2.   (iii) Due to this lack

of access for a disabled individual, the Plaintiff tried but could not access the fitness center from the lower lobby.   (iv) The action required to install a ramp or lift is easily accomplishable and able to be carried out without much difficulty or expense.





**LOBBY RESTROOM**

n.  (i) In lobby, the only way to access the men's restroom in the lobby is by using stairs.

(ii) The only way to access the men's restroom in the lobby is by using stairs and there is not an accessible route consisting of a ramp, elevator or platform lift to go up on the lobby level, in violation of Federal Law 2010; ADAAG § 402.2.   (iii) Due to this lack of access for an individual in a wheelchair, the Plaintiff observed the men's restroom in the lobby but could not access it.   (iv) The action required to install a ramp or lift is easily accomplishable and able to be carried out without much difficulty or expense.



## SECOND FLOOR ACCESSIBLE RESTROOM

o.   (i) In the second floor accessible restroom, the time for the entrance door to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The time for this door to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds and is only about 3 seconds, in violation of Federal Law 2010; ADAAG § 404.2.8.1. (iii) Due to the short time it takes for this door to close from an open position, the door closed on the Plaintiff's wheelchair before he could move through this doorway.   (iv) The action required to adjust the door closer to this door is easily accomplishable and able to be carried out without much difficulty or expense.

p.   (i) In the second floor accessible restroom, the door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than 18 inches.   (ii) In the second floor accessible restroom, the door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is only about 9 inches and is less than the minimum required clearance of 18 inches, in violation of Federal Law 2010; ADAAG Sections § 404.2.4. (iii) Due to this inadequate door pull side maneuvering clearance, the Plaintiff required assistance to move his wheelchair through this doorway.





q.   (i) The bottom edge of the mirror's reflecting surface in second floor accessible restroom

is higher than 40 inches above the floor.   (ii) The bottom edge of the mirror's reflecting surface

in the second floor accessible restroom is higher than 40 inches above the finish floor and is about

45.5 inches above the finish floor, in violation of Federal Law 2010; ADAAG § 603.3.   (iii) Due

to the height of this mirror's reflecting surface above the floor, the Plaintiff could not see his full

face in this mirror from his wheelchair.   (iv) The action required to relocate this mirror is easily

accomplishable and able to be carried out without much difficulty or expense.

r.   (i) In the second floor restroom, the lavatory drain and water supply pipes under the sink are not insulated.   (ii) These lavatory drain and water supply pipes, shown in the photograph below, are not insulated under this sink, in violation of Federal Law 2010; ADAAG § 606.5. (iii) Due to this lack of insulation on the drain and water supply pipes under this sink, the Plaintiff risked skin burns and injury to his legs when he used this sink.   (iv) The action required to insulate the drain and water supply pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.



s.   (i) In the second floor restroom, the rear wall grab bar is less than 36 inches long.   (ii) This rear wall grab bar, shown in the photograph below, is less than 36 inches long and is only

about 24 inches, in violation of Federal Law 2010; ADAAG §§ 604.5.2.   (iii) Due to the short

length of this rear wall grab bar, the Plaintiff had difficulty using it to transfer himself from his

wheelchair to the toilet.   (iv) The action required to replace this rear wall grab bar is easily

accomplishable and able to be carried out without much difficulty or expense.



t.      (i) In the second floor accessible restroom, the side wall grab bar is less than 42 inches

long.   (ii) This side wall grab bar, shown in the photograph below, is less than 42 inches long and

is only about 24 inches long, in violation of Federal Law 2010; ADAAG § 604.5.1.   (iii) Due to

the short length of this side wall grab bar, shown in the photograph below, the Plaintiff had

difficulty using it to transfer himself from his wheelchair to the toilet an aback again.   (iv) The

action required to replace this side wall grab bar is easily accomplishable and able to be carried out

without much difficulty or expense.



u.    (i) In the second floor accessible restroom, the side wall grab bar does not extend at least 54 inches from the rear wall.   (ii) This side wall grab bar only extends about 30 inches from the rear wall and does not extend the minimum required length of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010; ADAAG § 604.5.1.   (iii) Due to its lack of adequate extension from the rear wall, the Plaintiff had even more difficulty using this side wall grab bar to transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to replace this side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

v.    (i) In the accessible restroom on the second floor, centerline of the water closet or toilet is not between 16 and 18 inches from the side wall.   (ii) The centerline of this water closet or toilet, shown in the photograph below, is not between 16 and 18 inches from the side wall, in violation of Federal Law 2010; ADAAG §§ 604.2.   (iii) Due to the distance from the centerline of this toilet to the side wall, the Plaintiff had even more difficulty using the grab bars to position himself to use the toilet, had difficulty transferring himself from his wheelchair to the toilet, and could not reach the toilet paper from a normal sitting position on the toilet.   (iv) The action required to relocate this toilet is easily accomplishable and able to be carried out without much difficulty or expense.



w.   (i) The water closet or toilet in second floor accessible restroom does not have the flush

control mounted on the open and wide side of the clear floor space.   (ii) The water closet or

toilet, shown in the photograph below, in second floor accessible restroom does not have the

flush control mounted on the open and wide side of the clear floor space, in violation of Federal

Law 2010; ADAAG § 604.6.   (iii) Due to the location of the flush control for the toilet, the

Plaintiff could not flush the toilet from his wheelchair.   (iv) The action required to turn this flush

control to the other side is easily accomplishable and able to be carried out without much difficulty or expense.



x.       (i) The light switch in second floor accessible restroom is higher than 48 inches above the floor.   (ii) This light switch is higher than 48 inches above the finish floor and is about 55 inches above the finish floor, and it is outside the reach range of an individual in wheelchair, in violation of Federal Law 2010; ADAAG § 308.2.1.   (iii) Due to its height above the floor, the Plaintiff tried but could not operate this light switch from his wheelchair.   (iv) The action required to relocate this light switch is easily accomplishable and able to be carried out without much difficulty or expense.

**BREAKFAST AREA**

y.    (i) The top surface of the breakfast counter throughout the breakfast area is higher than 36 inches above the floor.   (ii) The top surface of the breakfast counter is all about 38 inches above the finish floor and no portion of this counter that is 36 inches long minimum and 36 inches high maximum is provided, in violation of Federal Law 2010; ADAAG § 904.4.1.   (iii) Due to the height of this breakfast counter above the floor, the Plaintiff had difficulty reaching breakfast items and could not reach some items on this counter.   (iv) The action required to provide a portion of this counter that is 36 inches long minimum and 36 inches high maximum is easily accomplishable and able to be carried out without much difficulty or expense.

z.    (i) The hot water flask dispenser handle, the coffee flask dispenser, the juice machine dispenser buttons, the top basket of cream containers for coffee, and the handle of the waffle maker are all higher than 48 inches above the floor ("breakfast items").   (ii)   These breakfast items are all higher than 48 inches above the finish floor where the reach depth is less than 20 inches, and outside of the reach range of an individual is a wheelchair, in violation of Federal Law 2010; ADAAG § 308.2.2.   (iii) Due to the height of these breakfast items above the floor, the Plaintiff tried but could not reach them from his wheelchair.   (iv) The action required to relocate the breakfast items or to lower a portion of the breakfast counter is easily accomplishable and able to be carried out without much difficulty or expense.

aa.    (i) The operation of the cereal dispenser twist knob in the breakfast area requires tight grasping or twisting of the wrist.   (ii) The operation of this cereal dispenser twist knob requires tight grasping or twisting of the wrist, in violation of Federal Law 2010; ADAAG § 309.4.   (iii)

The Plaintiff tried but could not operate these twist knobs due to their height above the floor and the nature of the knob.   (iv) The actions required to relocate the cereal dispenser and to replace the knobs or dispenser are easily accomplishable and able to be carried out without much difficulty or expense.

### ACCESSIBLE GUESTROOM 275

bb.  (i) Accessible guestroom 275 does not have signage with the International Symbol of Accessibility.   (ii) Accessible guestroom 275 does not have signage with the International Symbol of Accessibility, in violation of Federal Law 2010; ADAAG §§ 216.6 and 703.7.2.1. (iii) Due to the lack of signage with the International Symbol of Accessibility, the Plaintiff is deterred from staying at the Quality Inn, and the lack of such signage constitutes a barrier to access in that even though he requested an accessible room it does not appear that this room is accessible.   (iv) The action required to install signage with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.



cc.    (i) The time for the entrance door of accessible guestroom 275 to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.    (ii) The time for the entrance door of accessible guestroom 275 to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds and is only about 3 seconds, in violation of Federal Law 2010; ADAAG § 404.2.8.1.    (iii) Due to the short time it takes for this door to close from an open position, this door closed on the Plaintiff's wheelchair before he could make it through the doorway.    (iv) The action required to adjust the closer to this door is easily accomplishable and able to be carried out without much difficulty or expense.

dd.     (i) In accessible guestroom 275, the rod on which the coat hangers hang and the coat hangers are higher than 48 inches above the floor.   (ii) In accessible guestroom 275, the rod on which the coat hangers hang and the coat hangers are higher than 48 inches above the finish floor, in violation of Federal Law 2010 ADAAG; § 308.2.   (iii) Due to their height above the floor, the Plaintiff tried but could not reach these coat hangers from his wheelchair.   (iv) The action required to relocate the rod on which the coat hangers hang is easily accomplishable and able to be carried out without much difficulty or expense.

ee.   (i) In accessible guestroom 275, the iron holder and iron are higher than 48 inches above the floor.   (ii) This iron holder and iron are higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010; ADAAG § 308.2.   (iii) Due to the height of the iron holder and iron, shown in the photograph below, above the floor, the Plaintiff tried but could not reach the iron from his wheelchair.   (iv) The action required to relocate the iron holder is easily accomplishable and able to be carried out without much difficulty or expense.



ff.      (i) In accessible guestroom 275, the closet shelf is at higher than 48 inches above the

floor.   (ii) This closet shelf is higher than 48 inches above the finish floor and is about 69 inches

above the finish floor, violation of Federal Law 2010; ADAAG § 308.2.   (iii) The Plaintiff

observed the height of this closet shelf above the floor, and it deters him from staying at the

Quality Inn.   (iv) The action required to relocate this shelf is easily accomplishable and able to

be carried out without much difficulty or expense.

gg.   (i) In accessible guestroom 275, the security latch is higher than 48 inches above the

floor.   (ii) This security latch is higher than 48 inches above the finish floor and is as high as

about 61 inches above the finish floor, in violation of Federal Law 2010; ADAAG § 308.2.   (iii)

Due to its height above the floor, the Plaintiff tried but could not reach this security latch from

his wheelchair to operate it.   (iv) The action required to relocate this security latch is easily

accomplishable and able to be carried out without much difficulty or expense.

## RESTROOM IN ACCESSIBLE ROOM 275

hh.   (i) In the restroom of accessible guestroom 275, the operation of the door knob and lock

require tight grasping, pinching, or twisting of the wrist.   (ii) The operation of this door knob

and lock requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law

2010; ADAAG §§ 404.2.7 and 309.4.   (iii)   The Plaintiff tried could not operate this door knob

or lock with a closed fist or loose grip.   (iv) The action required to replace this door knob and

lock is easily accomplishable and able to be carried out without much difficulty or expense.



ii.   (i) In the restroom of accessible guestroom 275, a shower spray unit with a hose that can

be used both as a fixed-position shower head and as a hand-held shower is not provided.   (ii) In

the restroom of accessible guestroom 275, a shower spray unit with a hose that can be used both

as a fixed-position shower head and as a hand-held shower is not provided, in violation of

Federal Law 2010; ADAAG Section § 607.6.   (iii) Due to the lack of such a shower spray unit,

the Plaintiff required assistance to bathe.   (iv) The action required to install a shower spray unit

with a hose that can be used both as a fixed-position shower head and as a hand-held shower is

easily accomplishable and able to be carried out without much difficulty or expense.

jj.    (i) In the restroom of accessible guestroom 275, the clearance length parallel to the bathtub is less than the length of the bathtub.   (ii) The clearance length parallel to this bathtub is less than the length of the bathtub, in violation of Federal Law 2010; ADAAG Section § 607.2. (iii) Due to this lack of clearance, the Plaintiff required assistance to enter the bathtub.   (iv) The actions required to shorten the sink counter and to relocate the toilet are easily accomplishable and able to be carried out without much difficulty or expense.





kk.      (i) In the restroom of accessible guestroom 275, the clearance width parallel to the

bathtub is less than 30 inches next to the toilet.   (ii) The clearance width parallel to this bathtub

is less than the minimum required width of 30 inches next to the toilet and is only about 8 inches,

in violation of Federal Law 2010 ADAAG Section § 607.2.   (iii) Due to this lack of clearance, the Plaintiff required assistance to enter the bathtub.   (iv) The action required to relocate the toilet is easily accomplishable and able to be carried out without much difficulty or expense.



ll.      (i) In the restroom of accessible guestroom 275, a permanent seat at the head end of the bathtub or a removable in-tub seat capable of secure placement is not provided.   (ii) A permanent seat at the head end of the bathtub or a removable in-tub seat capable of secure placement is not provided, in violation of Federal Law 2010; ADAAG §§ 607.3 and 610.2.   (iii) Due to the lack of a seat in or for this bathtub, the Plaintiff also required assistance to bathe. (iv) The action required to install or provide a seat is easily accomplishable and able to be carried out without much difficulty or expense.

mm.              (i) In the restroom of accessible guestroom 275, the bathtub does not have two grab bars on the back wall of the bathtub.   (ii) As shown in the photograph below, this bathtub does not have two grab bars on the back wall of the bathtub, in violation of Federal Law 2010 ADAAG Section §§ 607.4.1 and 607.4.2.   (iii) Due to the lack of two grab bars on the back wall of this bathtub, the Plaintiff required additional assistance to bathe.   (iv) The action required to install grab bars is easily accomplishable and able to be carried out without much difficulty or expense.



nn.      (i) In the restroom of accessible guestroom 275, the only grab bar on the back wall of

the bathtub is not horizontal.   (ii) The only grab bar on the back wall of the bathtub is not

horizontal and the top of the gripping surface is not within 33 inches (840 mm) minimum and 36

inches (915 mm) maximum above the finish floor, in violation of Federal Law 2010 ADAAG

Section §§ 607.4 and 609.4.   (iii) Due to the placement of this grab bar, the Plaintiff required

additional assistance to bathe.   (iv) The action required to replace this grab bar is easily

accomplishable and able to be carried out without much difficulty or expense.

oo.      (i) In the restroom of accessible guestroom 275, the tub water control valve is not

between the centerline and the open side of the bathtub.   (ii) As shown in the photographs

below, this tub water control valve is not located between the centerline and the open side of the bathtub, in violation of Federal Law 2010; ADAAG Sections §§ 607.5 and 608.5.   (iii) The Plaintiff observed that this tub water control valve, and its location deters him from staying at the Quality Inn.   Even if the toilet is relocated, an individual in a wheelchair could not operate these controls in their present position from outside of the bathtub.   (iv) The action required to relocate these controls is easily accomplishable and able to be carried out without much difficulty or expense.





pp.      (i) In the restroom of accessible guestroom 275, the shower spray unit is fixed and it is

higher than 48 inches above the floor of the bathtub.   (ii) This shower spray unit is fixed and it is

higher than 48 inches above the finish floor of the bathtub and is about 71 inches above the finish

floor of the bathtub, in violation of Federal Law 2010; ADAAG Sections §§ 608.6. and 309.4.

(iii) Due to the fixed shower spray unit at a height more than 48 inches above the finish floor, the

Plaintiff required additional assistance to bathe.   (iv) The action required to install an ADA

compliant shower spray unit is easily accomplishable and able to be carried out without much

difficulty or expense.



qq.     (i) In the restroom of accessible guestroom 275, the toilet rear wall grab bar is less

than 36 inches long.   (ii) As shown in the photograph below, this rear wall grab bar to the toilet

is less than 36 inches long and is only about 18 inches long, in violation of Federal Law 2010;

ADAAG § 604.5.2.   (iii) Due to this short rear wall grab bar, and the lack of a side wall grab

bar, the Plaintiff required assistance to position himself to use the toilet.   (iv) The action

required to replace this rear wall grab bar is easily accomplishable and able to be carried out

without much difficulty or expense.



      rr.     (i) In the restroom of accessible guestroom 275, there is no side wall grab bar for the

toilet.  (ii) As shown in the photograph below, there is no side wall grab bar for the toilet, in

violation of Federal Law 2010; ADAAG § 604.5.   (iii) Due to this lack of a side wall grab bar,
the Plaintiff required assistance to position himself to use the toilet.   (iv) The actions required to
shorten the counter to the sink, relocate the toilet, and to install proper grab bars for the toilet are
easily accomplishable and able to be carried out without much difficulty or expense.



    ss.      (i) In the restroom of accessible guestroom 275, the top gripping surface of the toilet
rear wall grab bar is not between 33 and 36 inches above the floor.   (ii) The top gripping surface
of the rear wll grab bar is not between 33 and 36 inches above the finish floor and is as high as
about 42 inches above the finish floor, in violation of Federal Law 2010; ADAAG § 609.4.   (iii)
Due to its height above the floor and its short length, the Plaintiff could not effectively use this

grab bar, and he required assistance to position himself to use the toilet.   (iv) The actions required to replace and properly locate a rear wall grab bar are easily accomplishable and able to be carried out without much difficulty or expense.

tt.      (i) In the restroom of accessible guestroom 275, the knee clearance height under the lavatory sink is less than 27 inches.   (ii) The knee clearance height under the lavatory sink is less than 27 inches above the finish floor and is only about 20 inches above the finish floor, as shown in the photograph below, in violation of Federal Law 2010; ADAAG § 306.3.1.   (iii) Due to the lack of knee clearance, the Plaintiff could not make a front approach to use the sink from his wheelchair.   (iv) The action required to increase knee clearance is easily accomplishable and able to be carried out without much difficulty or expense.



uu.      (i) In the restroom of accessible guestroom 275, the water drain and supply pipes

under the sink are not insulated.   (ii) As shown in the photograph below, the water drain and

supply pipes under this sink are not insulated, in violation of Federal Law 2010 ADAAG §

606.5.   (iii) The Plaintiff observed that these pipes are not insulated, and it deters him from

staying at the Quality Inn.   (iv) The action required to insulate these pipes is easily

accomplishable and able to be carried out without much difficulty or expense.



vv.      (i) In the restroom of accessible guestroom 275, the centerline of the toilet paper

dispenser is not located between 7 and 9 inches from the front of the toilet.   (ii) As shown in the

photograph below, the centerline of the toilet paper dispenser is not located between 7 and 9

inches from the front of the toilet, in violation of Federal Law 2010; ADAAG § 604.7.   (iii) Due

to the location of this toilet paper dispenser, the Plaintiff could not reach toilet paper from this

dispenser from a normal sitting position on the toilet.   (iv) The action required to relocate this

toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty

or expense.



ww.         (i) In the restroom of accessible guestroom 275, the hairdryer is installed at

higher than 48 inches above the floor.   (ii) This hairdryer is installed at higher than 48 inches

above the finish floor and is as high as about 53 inches above the finish floor, in violation of

Federal Law 2010 ADAAG § 308.2.   (iii) Due to its height above the floor, the Plaintiff tried but

could not reach this hairdryer from his wheelchair.   (iv) The action required to relocate this hair

dryer is easily accomplishable and able to be carried out without much difficulty or expense.

xx.     (i) In the restroom of accessible guestroom 275, the shelf holding the bath towels is higher than 48 inches above the floor.     (ii) This shelf holding the bath towels is higher than 48 inches above the finish floor and is as high as about 62 inches above the finish floor, in violation of Federal Law 2010; ADAAG § 308.2.   (iii) Due to the height of this shelf above the floor, the Plaintiff tried but could not reach a bath towel from it.   (iv) The action required to relocate this towel shelf is easily accomplishable and able to be carried out without much difficulty or expense.

## POOL

yy.     (i) There is no signage with the International Symbol of Accessibility on or near the outside of the entrance door to the pool.   (ii) As shown in the photograph below, there is no signage with the International Symbol of Accessibility on or near the outside of the entrance door to the pool, in violation of Federal Law 2010; ADAAG §§ 216.6 and 703.7.2.1.   (iii) The Plaintiff observed this lack of signage, and it is a barrier to access in that it indicates to a disabled individual that the pool is not truly accessible, and it deters him from staying at the Quality Inn.   (iv) The action required to install signage with the International Symbol of Accessibility at the entrance to the pool is easily accomplishable and able to be carried out without much difficulty or expense.



    zz.   (i) In the pool area, there is a change of level of the walkway near the handrails that is greater than 0.5 inches.   (ii) In the pool area, the concrete of the walkway towards the pool entrance door is broken, as shown in the photograph below, and the change in level on the walkway of the accessible route to the pool near the handrails is about 1 inch and is greater than

the maximum allowed level change of 0.5 inches, in violation of Federal Law 2010; ADAAG §

303.3.   (iii) This change of level stopped the forward movement of the Plaintiff's wheelchair,

and he required assistance to move past it.   (iv) The action required to fix this broken concrete

and reduce this change in level is easily accomplishable and able to be carried out without much

difficulty or expense.



    aaa.            (i) In the pool area, the door pull side maneuvering clearance in a front

approach perpendicular to the doorway is less than 60 inches.   (ii) In the pool area, the door pull

side maneuvering clearance in a front approach perpendicular to the doorway is less than 60 inches and is only about 29 inches, in violation of Federal Law 2010; ADAAG Sections § 404.2.4.   (iii) The Plaintiff observed this lack of adequate maneuvering clearance space, and it deters him from staying at the Quality Inn.   (iv) The action required to increase this maneuvering clearance space is easily accomplishable and able to be carried out without much difficulty or expense.

bbb.        (i) In the pool area, the drain grate in the walkway near the pool has an opening greater than 0.5 inches wide.   (ii) The opening of the drain gate is about 1.5 inches wide and is greater than the maximum allowed opening of 0.5 inch, in violation of Federal Law 2010; ADAAG § 302.3.   (iii) The Plaintiff had to maneuver his wheelchair to avoid getting one of its wheels stuck or overturning it on this grate.   (iv) The action required to replace this grate is easily accomplishable and able to be carried out without much difficulty or expense.



**FITNESS CENTER**

ddd.    (i) There is no signage with the International Symbol of Accessibility on or near the outside of the fitness center.   (ii) As shown in the photograph below, there is no signage with the International Symbol of Accessibility on or near the outside of the entrance door to the fitness center, in violation of Federal Law 2010; ADAAG §§ 216.6 and 703.7.2.1.   (iii) The Plaintiff observed this lack of signage, and it is a barrier to access in that it indicates to a disabled individual that the fitness center is not accessible, and it deters him from staying at the Quality Inn.   (iv) The action required to install signage with the International Symbol of Accessibility at the entrance to the fitness center is easily accomplishable and able to be carried out without

much difficulty or expense.



40.     All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

41.     The discriminatory violations described in paragraph 39 are not an exclusive list of the Defendant's ADA violations.   Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access and to determine all of the areas of non-compliance with the Americans with Disabilities Act to which he was denied access including, but not limited to, the barriers to access he encountered in guestroom 275, lobby, lower lobby, breakfast area, restrooms, and at the fitness center and pool area.

42.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's building and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated, will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

43.     Defendant has discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.   Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford

all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

44.    Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

45.    Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

46.    Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

47.    Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees

and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

48.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Quality Inn and the parking lot, access aisles and walkways along the accessible routes, to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.      That the Court issue a Declaratory Judgment that determines that the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.      Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of

auxiliary aids and services.

     c.     An award of attorney's fees, costs and litigation expenses pursuant to 42

U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

     d.     Such other relief as the Court deems just and proper, and/or is allowable

under Title III of the Americans with Disabilities Act.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates

Denver, Colorado as the place of trial for this action.

     Respectfully submitted,

     s/Robert J. Vincze_____
     Robert J. Vincze (CO #28399)
     Law Offices of Robert J. Vincze
     PO Box 792, Andover, Kansas 67002
     Phone: 303-204-8207
     Email: vinczelaw@att.net

     *Attorney for Plaintiff Fred Nekouee*